**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 24-cr-184 (LLA)** |
| **v.** | : | |
| | : | |
| **CHRISTOPHER GUTIERREZ** | : | |
| | : | |
| **Defendant** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Christopher Gutierrez ("Gutierrez") has pleaded guilty to two second degree misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count One) and a violation of 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building) (Count Two). For the reasons set forth herein, the government requests that this Court sentence Gutierrez to 30 days' incarceration on Count One and 36 months' probation on Count Two. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.     **Introduction**

Defendant Christopher Gutierrez, a 37-year-old resort manager from Salinas, California, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the

1

peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

Gutierrez pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by Gutierrez's (1) pre-planning to march on the U.S. Capitol on January 5, 2021; (2) decision to enter and remain on Capitol grounds despite hearing explosions as he approached the Capitol; (3) celebratory behavior on the northwest staircase before entering the Capitol, and throughout his time inside the Capitol, which was intended to gin up the crowd; (4) 45 minutes inside the Capitol; (5) wide travel inside the Capitol; (6) statements to rioters to "hold" their "ground"; (7) continued and protracted presence on Capitol grounds after he was pushed out of the building by police; and (8) apparent lack of remorse.

The Court must also consider that Gutierrez's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Gutierrez's crime support a sentence of to 30 days' incarceration on Count One and 36 months' probation on Count Two in this case.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

II.        **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 1-1 at 1-2 (Complaint Affidavit); ECF 28 at 1-3 (Statement of Offense). This Court is familiar with the full backdrop of January 6, 2021, as observed in the case and sentencing of *United States v. Adam Kovsky*, 24-cr-65 (LLA).

*Defendant Gutierrez's Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Christopher Gutierrez used a Go-Pro to capture his plans for going to the U.S. Capitol on January 6, 2021. In one video, Gutierrez captured a FOX NEWS broadcast on the television set in a hotel room. The headline on the broadcast read, "Long Day: Objections to Certification Could Take Hours to Debate" with an image of the U.S. Capitol dome in the background.  Gutierrez then turned to an unidentified male who was sitting in a chair looking at a laptop. Gutierrez filmed the laptop screen, which showed a Google Maps layout of Washington, D.C. While interacting with the map, Gutierrez stated, among other things, "Getting our layout for tomorrow's route. . . . There's the Capitol Building. We'll be starting our day, morning rather  . . . a block or so further down to the Ellipse where we will be and where Trump will be. . . .  After that, we're going to move down Pennsylvania Avenue to the Capitol Building. . . . The gathering at the Capitol will be at 1 o'clock." (Exhibit 1)



*Exhibit 1: Screenshot of Gutierrez's Gro-Pro footage from January 5, 2021 showing a Google Maps layout of the U.S. Capitol.*

On January 6, 2021, Gutierrez was distinctively dressed in a green, long sleeve sweatshirt, a black vest, a green scarf or neck gaiter, a black hat, and black sunglasses.  He held a PVC pipe attached to a white and black flag that depicted a broken snake and the words, "Join or Die."

After attending the "Save America" rally and former President Trump's speech at the National Mall, Gutierrez marched through Washington, D.C. towards the U.S. Capitol Building. He approached the U.S. Capitol building from the west. While on restricted Capitol grounds, Gutierrez climbed the northwest staircase of the U.S. Capitol Building that leads to the Upper West Terrace of the U.S. Capitol Building.  From there, the building can be accessed via several entrance points.  One of those—the Senate Wing Door—was where the rioters first breached the building on January 6, 2021.  At approximately 2:14 p.m., they smashed through the windows on either side of the Senate Wing Door, scattering shattered glass.  They then broke open the Senate Wing Door itself, causing a loud alarm to sound for several hours.

At approximately 2:21 p.m., Gutierrez appeared on United States Capitol Police ("USCP") Closed Circuit Television ("CCTV") at the bottom of the northwest staircase and raised his arm and fist in the air and cheered (Exhibit 2.1). Shortly thereafter, Gutierrez climbed up the banister of the staircase, bypassing large crowds of rioters who had amassed on the staircase. As Gutierrez scaled the banister even further, he put up his hands and appeared to cheer again, waving his "Join or Die" flag (Exhibit 2.2).



*Exhibit 2.1: GUTIERREZ (circled in yellow) at the northwest staircase of the U.S. Capitol Building.*



*Exhibit 2.2: GUTIERREZ (circled in yellow) at the northwest staircase of the U.S. Capitol Building.*

USCP CCTV cameras captured images of individuals who unlawfully entered and rioted inside the U.S. Capitol Building on January 6, 2021. At 2:49 p.m., Gutierrez entered the U.S. Capitol through the Senate Wing Door—only 35 minutes after its initial breach—by climbing through a shattered window adjacent to the Senate Wing Door (Exhibit 3).



*Exhibit 3: GUTIERREZ (circled in yellow) entering U.S. Capitol through a broken window in the Senate Wing.*

Inside the Senate Wing foyer, Gutierrez perched on an elevated object and flew his flag as he and his fellow rioters chanted "USA, USA!" (Exhibit 4).



*Exhibit 4: Gutierrez (circled in yellow) waving his flag and demonstrating inside the Senate Wing foyer.*

Gutierrez then advanced further into the Capitol Building, making his way to the Crypt at approximately 3:00 p.m.  There, he held up his flag and pumped his fists. (Exhibit 5).



*Exhibit 5: Gutierrez (circled in yellow) entering the Crypt at 3:00 p.m., pumping his fist and waving his flag.*

At approximately 3:01 p.m., Gutierrez walked to the Hall of Columns, near an exit of the U.S. Capitol building.  Gutierrez pumped his fists again as he approached several uniformed USCP officers dressed in riot gear, helmets, and face masks. Instead of leaving, Gutierrez turned around and moved north toward the Crypt (Exhibit 6).



*Exhibit 6: Gutierrez (circled in yellow) in the Hall of Columns at 3:01 p.m.*

Gutierrez re-entered the Crypt at approximately 3:06 p.m. (Exhibit 7). While there, Gutierrez paraded in circles, waving his flag while rioters chanted "Freedom!" and "USA, USA!" (Exhibit 8).



*Exhibit 7: Gutierrez (circled in yellow) re-entering the Crypt at 3:06 p.m.*



*Exhibit 8: Gutierrez (circled in red) parading inside the Crypt.*

Gutierrez stayed in the Crypt from approximately 3:06 p.m. to 3:33 p.m., marching and waving his flag. He did not voluntarily leave. Rather, numerous police officers entered the Crypt at approximately 3:32 p.m. and forced the rioters out (Exhibit 9).



*Exhibit 9: Gutierrez (circled in yellow) inside the Crypt at 3:33 p.m. as officers began clearing the mob.*

Gutierrez's own Go-Pro footage captured this scene. As police officers entered the Crypt, a rioter near Gutierrez noted, "they're trying to push us out." Gutierrez then stated, "They can't put their hands on you. Stand your ground. Stand your ground, people. They can't touch you." Officers—some in regular police uniforms and others wearing riot gear—surrounded the rioters and clearly and audibly instructed the mob to "move," as captured in Gutierrez's footage (Exhibit 10).



*Exhibit 10: Screenshot from Gutierrez's Go-Pro footage from inside the Crypt as officers began clearing the mob.*

Gutierrez exited the U.S. Capitol Building through the Memorial Doors at approximately 3:34 p.m.  As he exited the building, Gutierrez stated, "Spirit of '75! You will all appreciate this day!" as he pointed his finger toward the interior of the Capitol. He went on to exclaim, "Spirit of '75! Do not lose it! Hold your ground! Stand and fight." (Exhibit 11).



*Exhibit 11: Gutierrez (circled in yellow) exiting the Capitol through the Memorial Doors at approximately 3:34 p.m.*

After he was removed from the Capitol building, Gutierrez remained on restricted Capitol grounds. Gutierrez's own Go-Pro footage shows him outside the East Rotunda Door of the Capitol, standing on one of the large marble pillars, as he waved his flag back and forth. His Go-Pro footage captured a violent scene of rioters attempting to break down the East Rotunda Doors, with members of the mob hurling objects at the door, appearing to suffer from the effects of a chemical irritant, and screaming "Go back in!" (Exhibit 12). In another Go-Pro video from the same location, Gutierrez joined the crowd in chanting, "USA, USA."



*Exhibit 12: Screenshot from Gutierrez's Go-Pro, showing the mob outside of the East Rotunda Doors.*

Yet, Gutierrez remained on the restricted East Plaza of the Capitol building, refusing to leave even as police offers waved him and the rioters off the East Rotunda Steps (Exhibit 13).



*Exhibit 13: Gutierrez (circled in yellow) on the East Rotunda Steps of the Capitol, as officers began clearing the area.*

*Social Media Posts*

On January 7, 2021, Gutierrez, using the name "Christopher Carr," posted from his Facebook account, stating in part, "[W]e were marching when we heard the news about pences [sic] decision and that is what triggered the uproar. We lost the house senate and our president. I need to make a video or two of what it was like being inside the capital [sic]." (Exhibit 14). In a message exchange also on January 7, 2021, in response to another individual's comment "bro u went lol ahahahahah fuck ya. Hope u didn't break into the capitol building ahahahahhahaah." Gutierrez responded, "I was the last one out!" (Exhibit 15).

**Author** Christopher Carr (Facebook: 100000660994846)
**Sent** 2021-01-07 04:58:40 UTC
**Body** Hey sue I'm taking the videos down, headed back to Arizona/Ca I'm
on cbs/cnn cameras giving my name talking about being in the
capital building. I have footage of the trump speech to the march
on the capital, we were marching when we heard the news about
pences decision and that is what triggered the uproar. We lost the
house senate and our president. I need to make a video or two of
what it was like being inside the capital. Wish I could have had
time to say hi hope you guys are well, and thanks for sharing today

*Exhibit 14: Screenshot from GUTIERREZ's Facebook account.*

**Author** ▰▰▰▰▰▰▰▰▰▰
**Sent** 2021-01-07 17:59:19 UTC
**Body** bro u went lol ahahahahah fuck ya

**Author** ▰▰▰▰▰▰▰▰▰▰
**Sent** 2021-01-07 17:59:34 UTC
**Body** Hope u didnt break into the capitol building ahahahahhahaah

**Author** Christopher Carr (Facebook: 100000660994846)
**Sent** 2021-01-07 18:06:14 UTC
**Body** I was the last one out!

*Exhibit 15: Screenshot from GUTIERREZ's Facebook account.*

After January 6, 2021, the FBI received a tip from a member of the public concerning Gutierrez. According to the tipster, Gutierrez posted two videos on Facebook of himself inside the Capitol and one video of himself outside of the Capitol building. The tipster also sent multiple screenshots from Gutierrez's Facebook account (Exhibits 16, 17). In one Facebook post, Gutierrez stated, "I am fully aware of my sole actions and take full responsibility. Chose to take the videos down to make a more in depth one. May not get a chance to so keep the spirit, stay safe and God Bless America." Along with the caption, Gutierrez posted a photograph of an FBI alert seeking information about the individuals who were present at the U.S. Capitol on January 6 (Exhibit 16).



*Exhibits 16 & 17: Screenshots of GUTIERREZ's Facebook posts.*

*Gutierrez's Interview*

On April 7, 2021, Gutierrez was interviewed by FBI Agents at his residence in Salinas, California regarding his involvement in the events on January 6, 2021. Gutierrez told the agents that he drove to Washington, D.C. with a friend, who he refused to identify, and arrived on January 5, 2021. On the morning of January 6, Gutierrez left his hotel and walked to the Washington Monument to attend the Stop the Steal Rally, bringing water and medical supplies to provide aid if needed. As Gutierrez marched toward the Capitol, he heard two loud explosions, approximately

25 minutes apart. Gutierrez later approached the Capitol Building from the west, where rioters had broken a window located next to the Senate Wing Door, on the northwest side of the Capitol, to gain access to the Capitol Building. Gutierrez explained that he climbed through the same broken window and entered the Capitol Building. Gutierrez told the agents the areas where he went inside the Capitol Building. He explained that, while in the Crypt, he heard a gunshot ring out and advised everyone to remain calm and respectful. Gutierrez indicated that law enforcement tried to direct the crowd to an exit on the south side of the Capitol building, and while some individuals did exit the Capitol, he and many others retreated to the room from which they heard the gunshot. He explained that he was escorted out of the building by the National Guard. Gutierrez stated he did not leave Capitol grounds until 6 p.m. on the night of January 6, 2021. Gutierrez voluntarily agreed to submit his Go-Pro footage from January 6 to the FBI.

Gutierrez remained inside the U.S. Capitol Building from approximately 2:49 p.m. to 3:34 p.m.—45 minutes. He remained on Capitol grounds for even longer. Taking him at this word, Gutierrez remained inside the Capitol and on restricted Capitol Grounds for almost 4 hours.

*The Charges and Plea Agreement*

On September 22, 2023, Gutierrez was charged in a complaint with Entering or Remaining in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(1); Disorderly Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2): Disorderly Conduct in a Capitol Building or Grounds, 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G). On September 27, 2023, Gutierrez was arrested in Mono Hot Springs, California. On April 12, 2024, the United States charged Gutierrez by a two-count Information with violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). On April 29, 2024, pursuant to a plea agreement, Gutierrez pleaded guilty to Counts One and Two of the Information, charging him

with a violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

Gutierrez now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, Gutierrez faces up to six months of imprisonment and a fine of up to $5,000. Gutierrez must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 30 days' incarceration on Count One and 36 months' probation on Count Two.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Gutierrez's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Gutierrez, the

20

absence of violent or destructive acts is not a mitigating factor. Had Gutierrez engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Gutierrez's case is his pre-planning to march on the U.S. Capitol on January 5, 2021. Not only did he map out his movements from the White House to the Capitol, but he also brought medical supplies with him. As Gutierrez approached the Capitol, he heard explosions coming from the Grounds. Instead of turning around and going home, he marched to the Capitol, climbed the banisters of the northwest staircase, and pumped his fists in celebration as the Capitol was violently overtaken by the mob.  He did not stop there. Gutierrez then entered the Capitol through a shattered window adjacent to the Senate Wing Door and remained in the Capitol for 45 minutes. While inside the Capitol, he chanted and waved his flag repeatedly in an effort to gin up the crowd. When Gutierrez had the opportunity to exit the Capitol through the Memorial Doors at approximately 3:01 p.m., he instead decided to turn around and return to the Crypt—where he initially heard gunshots—remaining inside the Capitol for another 33 minutes before finally being forced out by police officers at 3:34 p.m. While exiting, Gutierrez exclaimed, "Do not lose it! Hold your ground! Stand and fight." Again, it did not stop there. Gutierrez then went to the East Side of the Capitol, where he filmed the mob attempting to breach the East Rotunda Doors. In the aftermath of January 6, Gutierrez bragged on Facebook that he was the "last one out" of the Capitol and admitted to staying at the Capitol until 6 p.m., well after the police forced him out of the building. Gutierrez's nearly 4 hours at the Capitol contributed to Congress's inability to certify the 2020 election for several hours and the danger to staffers, legislators, and police officers present inside the Capitol and on its Grounds. While Gutierrez did express his intent to plead guilty early in his case, the nature and the circumstances of this offense

and his apparent lack of remorse establish the clear need for a sentence of incarceration in this matter.

### B.  Gutierrez's History and Characteristics

As set forth in the PSR, Gutierrez does not have a criminal history. *See* Draft PSR ¶¶ 41-42. Gutierrez does not report any abuse of alcohol or drugs, *id.* ¶¶ 69-71, and he reported a supportive upbringing, *id.* ¶¶ 50-56.  Gutierrez has a high school diploma and currently works as a manager for Wilderness Hospitality, LLC in Altadena, California, where he does electrical, plumbing, vehicle maintenance, among other tasks, for the Vermillion Valley Resort. *Id.* ¶¶ 74, 78. In the off season (November to March), Gutierrez reported that he does various odd jobs to support himself financially. *Id.* ¶ 79. Gutierrez reported that his monthly income is roughly $10,000. *Id.* ¶ 82. Gutierrez has been compliant with his conditions of pre-trial release.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a short term of imprisonment. As outlined above, Gutierrez has experienced many advantages in his life – he has a supportive home life and consistent employment history. And yet, despite these advantages and in spite of recognizing the wrongfulness of his participation in the January 6 riot, he still entered the restricted area, remained even though police officers urged the mob to leave, and celebrated doing so. The Court must sentence Gutierrez in a manner to deter him from ignoring his better judgment in the future.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as

in this case, to assault on police officers.[2] This Court must sentence Gutierrez based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Gutierrez has pleaded guilty to Counts One and Two of the Information, charging him of 40 U.S.C. §§ 5104(e)(2)(D) and (G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases,

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012); *see United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson).

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *U.S. v. Matthew Webler*, 21-cr-471 (DLF), the defendant, like Gutierrez, entered the Capitol through a broken window, traveling past unmistakable signs of violence including broken glass and damaged property; (2) cheered and celebrated during the breach, singing "Happy birthday to me," while inside the Capitol, and shouted to the crowd, "Woo, 1776!" upon exiting; (3) made statements on Facebook after January 6 revealing a lack of remorse; and (4) had a prodigious criminal history. Following his guilty plea to violating 40 U.S.C. § 5104(e)(2)(G), Judge Friedrich sentenced Webler to 45 days' incarceration and $500 in restitution. Although Gutierrez's criminal conduct was very similar to Webler's in several ways, Gutierrez has no criminal history, and so should receive a lower sentence. But like Webler, Gutierrez's criminal conduct merits a custodial sentence.

*U.S. v. Jeffrey Schaefer*, 22-cr-69 (JDB) is another comparable case. On January 4, 2021, Schaefer shared a text with a friend that read, "The world has gone mad" and "prepping for DC. Game face on," On January 5, 2021, he posted an image on his Facebook page of himself inside a vehicle with a caption that stated "DC Bound" with the American flag. While watching television on January 6, he saw the riot taking place outside the Capitol and took an Uber to the Capitol. As he approached the Capitol from the west front, he observed police officers blocking access to the Capitol and clashing with rioters. Schaefer then climbed over a short wall near the scaffolding. At approximately 2:50 p.m. he entered the Capitol through the same broken window near the Senate Wing Door that Gutierrez did. Like Gutierrez, Schaefer chanted with other rioters inside the Capitol. Like Gutierrez, he left the Capitol about half an hour later at the direction of police officers but remained on the Capitol grounds. Schaefer watched and encouraged other rioters who destroyed camera equipment belonging to members of the media. After Schaefer pleaded guilty to violating § 5104(e)(2)(G), Judge Bates sentenced him to 30 days incarceration.

This court is familiar with *U.S. v. Adam Kovsky*, 24-cr-65 (LLA). On January 6, 2021, like Gutierrez, Kovsky entered the Capitol through a broken window in the Senate Wing, despite the obvious signs that he should not. Like Gutierrez, Kovsky joined in chants and cheers by other rioters on restricted Capitol grounds. While inside the Capitol, Kovsky managed to pick up a broken piece of wooden furniture, which he brought home as a souvenir. Like Gutierrez, Kovsky celebrated the overtaking of the Capitol, calling it a "success." This court sentenced Kovsky to 36 months' probation. However, there are many notable differences that make Gutierrez's conduct significantly more serious: (1) Gutierrez's level of planning and preparation before January 6, including mapping out his route from the Ellipse to the Capitol and bringing medical supplies; (2) Gutierrez's length of time inside the Capitol. Kovsky spent 4 minutes inside the Capitol, whereas Gutierrez spent 45 minutes inside the Capitol, contributing to Congress's inability to certify the 2020 election for several hours and the danger to staffers, legislators, and police officers present inside the Capitol and on its Grounds; (3) Gutierrez's wide travel inside the Capitol. Kovsky did not make it past the Senate Wing foyer, whereas Gutierrez marched throughout various locations in the Capitol; (4) Gutierrez's protracted time on Capitol Grounds. There is no evidence to support that Kovsky remained on Capitol Grounds for nearly 4 hours like Gutierrez did; and (5) unlike Kovsky, Gutierrez lacks remorse for his actions. Gutierrez's conduct is distinguishable and more troubling than Kovsky's, which supports the Government's request for a term of incarceration in this case.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the

result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

### V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Gutierrez must pay $500 in restitution, which reflects in part the role Gutierrez played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a Exhibit based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* Gutierrez's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 105.

## VI.    Fine

Gutierrez's convictions for violations of 40 U.S.C. §5104(e)(2)(D) (Count One) and 40 U.S.C. §5104(e)(2)(G) (Count Two) subject him to a statutory maximum fine of $5,000 for Count One and $5,000 for Count Two. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider Gutierrez's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

Here, Gutierrez has not shown an inability to pay, thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e).

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 30 days' incarceration on Count One and 36 months' probation on Count Two. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Gutierrez's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Julie Bessler*
Assistant United States Attorney
PA Bar No. 328887
601 D Street N.W.
Washington, D.C. 20530
(202) 809-1747
Julie.Bessler@usdoj.gov